**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA**
Case No. _____ (Judge's Last Name/Magistrate's Last Name)

IAN ANTHONY MEDINA,

        Plaintiff,

| |
|---|
| 20-CIV-62173-Smith/Valle |

   v.

SUPREME COURT OF GEORGIA,        **JURY TRIAL DEMANDED**
GEORGIA OFFICE OF BAR
ADMISSIONS,

        Defendants.
_____/

FILED BY _____ LS _____ D.C.

Oct 26, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Fort Lauderdale

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

I. On or about January 2019, Plaintiff IAN ANTHONY MEDINA started to apply to sit for the Georgia Bar Examination;

II. Defendants questioned Plaintiff IAN ANTHONY MEDINA about his mental health, treatment, diagnosis and other medical history;

III. Throughout spring and early summer 2019, Plaintiff IAN ANTHONY MEDINA and Defendants voluntarily engaged in a unilateral exchange of information wherein Plaintiff IAN ANTHONY MEDINA sent documentation, sent explanations, went to informal conference for questioning, underwent alcohol and drug testing and underwent an arduous 12 hour-long psychological evaluation;

IV. The July 2019 Georgia Bar Examination came and went without any notice of clearance of character and fitness or lack thereof;

V. After a cordial email message on or about September 2019, Plaintiff IAN ANTHONY MEDINA was told that he would receive certified mail regarding the decision of character and fitness for the July 2019 Georgia Bar Examination;

VI. On or about September 2019, Plaintiff IAN ANTHONY MEDINA received an informal letter from Defendants denying him licensure to be an attorney in Georgia due to his mental health, treatment, diagnosis and other medical history; *See* Exhibit 1.

VII. The letter offered Plaintiff IAN ANTHONY MEDINA to undergo formal hearing before an adversarial non-neutral tribunal against a now adversary. The letter never mentioned that foregoing formal hearing would deprive Plaintiff IAN ANTHONY MEDINA the right to appeal to the Supreme Court of the United States; *Id.*

VIII. On or about October 2020, Defendants intelligently but maliciously sent a formal letter denying Plaintiff IAN ANTHONY MEDINA licensure to practice law in Georgia and failed to provide any reasoning at all; *See* Exhibit 2

IX. Plaintiff IAN ANTHONY MEDINA filed a petition for writ of certiorari to the Supreme Court of the United States that was remanded back to federal district court. *See* Exhibit 3.

### LEGAL CLAIMS

X. Questioning about mental health, diagnosis, treatment and other medical history on Bar Applications for licensing of attorneys is unconstitutional because it discriminates and oppresses a segment of society that merits constitutional scrutiny in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., Health Insurance Portability and Accountability Act of 1996, 45 CFR Part 160 and Part 164.

XI. Plaintiff IAN ANTHONY MEDINA's denial of licensure to practice law in Georgia was unconstitutional and in contravention to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

XII. Plaintiff IAN ANTHONY MEDINA's lack of notice and denial of licensure to practice law in Georgia was unconstitutional and in contravention to Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., the Fourteenth Amendment Due Process Clause and Fourteenth Amendment Equal Protection Clause.

XIII. Accordingly, Plaintiff IAN ANTHONY MEDINA charges as follows:

## COUNT 1 – Defendants' Rules Governing Admission to the Practice of Law Authority for Attorney Licensing Scheme Is Unconstitutional, Ga. R. Gov. Adm. To The Prac. Of Law § 1, *et seq.*

XIV. Defendants' are furthering an unconstitutional and unlawful attorney licensing scheme. The Georgia Rules Governing Admission to the Practice of Law, *supra*, is unconstitutional because it unlawfully deprives Bar Applicants discretionary appellate review in the Supreme Court of the United States by failing to provide an opinion from the Supreme Court of Georgia. Instead, the Supreme Court of Georgia is rendering a formal opinion through the Office of Bar Admissions as a cloak and shield from litigants in the Supreme Court of the United States.

XV. Moreover, Defendants' are deceiving Bar Applicants by omission that failing to undergo formal hearing relinquishes rights and privileges afforded to Bar Applicants under the Constitution of the United States of America, its statutes and treatises. Accordingly, Georgia's deprival of Bar Applicants' of their right to appeal to the Supreme Court of the United States under judicial review is unconstitutional. *Marbury v. Madison*, 5 U.S. 137 (1803).

## COUNT 2 – Violations of the Americans with Disabilities Act of 1990 (the "ADA")

XVI. Title III of the ADA provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." (42 U.S.C. § 12182(a)).

XVII. A Plaintiff in a Title III ADA claim must prove 3 elements in order to prevail: (1) that Plaintiff is disabled within the meaning of the ADA; (2) that the Defendant's owns, leases, or operates a place of public accommodation; and (3) that Plaintiff was denied public accommodation by the Defendant due to his or her disability. *Arizona ex re. Goddard v. Harkins Amusement Enters, Inc.,* 603 F.3d 666, 670 (9th Cir.2012); *see also Dunlap v. Ass'n of Bay Area Gov'ts,* 996 F.Supp. 962, 965 (N.D. Cal. 1998); *see also, Shultz v. Hemet Youth Pony League,* 943 F.Supp. 1222, 1225 (C.D. Cal. 1996).

XVIII. The third element – whether Plaintiff was denied access on the basis of disability – is met if there was a violation of applicable accessibility standards.

*Chapman v. Pier I Imports U.S., Inc.,* 631 F.3d 939, 945 (9th Cir.2011); *Donald v. Cafe Royale,* 218 Cal.App.3d 168, 183).

XIX.     Here, Plaintiff is disabled under the ADA because he has mental health disorders that are under treatment and asymptomatic.  Defendant operates public accommodations for attorney licensing scheme in the state of Georgia providing licensure to Georgia lawyers.  Plaintiff was denied licensure to become an attorney in Georgia, denying public accommodations due to Plaintiff's disability.  Thus, Plaintiff sets out a prima facie case for ADA violations.

### COUNT 3 – Violations of the Fourteenth Amendment Due Process Clause

XX.     Defendants did unlawfully deprive Plaintiff IAN ANTHONY MEDINA of his procedural rights afforded to him by the Fourteenth Amendment of the Constitution of the United States when Defendants issued denial of licensure without a fair hearing.

### COUNT 4 – Violations of the Fourteenth Amendment Equal Protection Clause

XXI.     Defendants did unlawfully apply the law, regulations and requirements to attorney licensure unequally to Plaintiff IAN ANTHONY MEDINA due to his mental health when compared to similarly situated counterparts not in Plaintiff IAN ANTHONY MEDINA's constitutionally protected classes meriting constitutional scrutiny;

XXII.     Plaintiff is Hispanic/Latino, a member of the LGBTQ community, Jewish and disabled;

XXIII.     Accordingly, similarly situated counterparts not in Plaintiff IAN ANTHONY MEDINA's constitutionally protected classes were not subjected to informal conference, alcohol and drug testing and an arduous 12-hour long psychological evaluation.

XXIV.     Thus, the law was unequally applied in denial of attorney licensure and application of heightened scrutiny to Plaintiff IAN ANTHONY MEDINA due to being disabled and/or his race, his ethnicity, his religion and his sex.

### PRAYER FOR RELIEF

XXV.     **WHEREFORE,** Plaintiff prays that this Court intervene and provide the following remedies:

1) Declaratory judgment invalidating the Georgia Rules Governing Admission to the Practice of Law unconstitutional;

2) Declaratory judgment barring states from questioning Bar Applicants regarding mental health, mental status, psychiatric records, diagnosis, treatment, medical history, medical records, psychological status and any other medical health condition;

3) Declaratory judgment certifying Plaintiff Ian Anthony Medina to practice law in Georgia and Florida;

4) Compensatory and special damages for lost wages, loss of earning capacity, moving expenses, defamation, loss of good reputation in the amount of $250,000;

5) Punitive damages in the amount of $1,000,000;

6) That all issues be tried before a jury.

This 26th day of October, 2020.

3

Respectfully submitted,

/s/ Ian A. Medina
Ian Anthony Medina, JD
Florida Bar No.: _____
iananthonymedina@iamlawgroup.com

IAM Law Group
110 SE 6th Street, Suite 1700
Fort Lauderdale, Florida 33301

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing COMPLAINT AND DEMAND FOR JURY TRIAL was filed with the Clerk of Court for the United States District Court in the Southern District of Florida and the same was sent via first-class USPS Mail to:

Christopher Carr, Esq.
Attorney General
Georgia Office of the Attorney General
40 Capitol Sq. SW
Atlanta, Georgia 30334

Heidi Manroe Faenza
Executive Director
Georgia Office of Bar Admissions
244 Washington St. SW #440
Atlanta, GA 30334

This 26th day of October, 2020.

Respectfully submitted,

/s/ Ian A. Medina
Ian Anthony Medina, JD
Florida Bar No.: _____
iananthonymedina@iamlawgroup.com

IAM Law Group
110 SE 6th Street, Suite 1700
Fort Lauderdale, Florida 33301



SUPREME COURT OF GEORGIA
## OFFICE OF BAR ADMISSIONS

BOARD TO DETERMINE FITNESS
OF BAR APPLICANTS

BOARD OF BAR EXAMINERS

HEIDI M. FAENZA
DIRECTOR OF ADMISSIONS

September 13, 2019

Mr. Ian Anthony Medina
20 Terminus Place NE
Unit 1314
Atlanta, GA 30305

<u>SENT VIA CERTIFIED MAIL</u>

Dear Mr. Medina:

The Rules Governing Admission to the Practice of Law in Georgia at Part A, Section 2, charge the Board with the duty to "inquire into the character and fitness of applicants for admission to the practice of law and . . . certify as fit to practice law those applicants who have established to the Board's satisfaction that they possess the character and fitness requisite to be members of the Bar of Georgia." The Policy Statement of the Board Regarding Character and Fitness Reviews states that "[i]n order to be certified for fitness, the Board requires that an applicant to the bar be one whose record of conduct justifies the trust of clients, adversaries, courts and others." The Board views character and fitness as including, among other things, the ability to conduct oneself with a high degree of honesty, integrity, and trustworthiness with regard to all legal obligations and in all professional relationships. The burden of establishing good character and fitness for admission to the bar remains at all times upon the applicant.

After carefully reviewing your file, the Board has determined that you have failed to carry your burden of establishing that you possess the requisite character and fitness for admission to the practice of law in Georgia. Specifically, the Board has determined that your record reflects a deficiency in your ability to exercise good judgment and trustworthiness in handling legal obligations on behalf of yourself and clients. This is, in part, based on your informal conference with the Board and due to your psychiatric condition established by information you submitted to the Board and outlined by the Independent Medical Evaluation you underwent at the Board's request. Accordingly, the Board has tentatively denied your Application for Certification of Fitness to Practice Law.

Pursuant to Part A, Section 8, of Georgia's Rules Governing Admission to the Practice of Law, you have a right to a formal hearing with respect to the reasons for the Board's tentative denial. To avail yourself of this right, you must provide to the Office of Bar Admissions, within ten business days of your receipt of this letter, a written request for a formal hearing. The Rules Governing Admission to the Practice of Law may be found at

244 WASHINGTON STREET, SW, SUITE 440     ATLANTA, GA 30334     404-656-3490     http://www.gabaradmissions.org

Mr. Ian Anthony Medina
September 13, 2019
Page 2 of 2

www.gabaradmission.org.  If no timely request for a formal hearing is filed, the Board's tentative order shall become final and non-appealable.

I invite your attention to Part F, Section 6, of the Rules Governing Admission to the Practice of Law in Georgia regarding communications with Board Members.

Sincerely,

Heidi M. Faenza
Director of Admissions

cc:    Russell D. Willard, S.A.A.G.

*Certified Mail #: 7018 0680 0001 9490 4007*

# User Home (userhome.action) » Messages



Exhibit 2

**Final Order of Denial Letter**                                                                                      **Nov 18 2019**



### SUPREME COURT OF GEORGIA
### OFFICE OF BAR ADMISSIONS
### (404) 656-3490

BOARD TO DETERMINE FITNESS              November 18, 2019                          HEIDI M. FAENZA
OF BAR APPLICANTS                                                              DIRECTOR OF ADMISSIONS

BOARD OF BAR EXAMINERS

Mr. Ian Anthony Medina
20 Terminus Place NE
Unit 1314
Atlanta, GA 30305

SENT VIA CERTIFIED MAIL on October 29, 2019
<u>POSTED TO HOMEPAGE on November 18, 2019</u>

Dear Mr. Medina:

In accordance with Part A, Section 8, of the Rules Governing Admission to the Practice of Law in Georgia, an applicant who has been issued a tentative order of denial of his or her Application for Certification from the Board to Determine Fitness of Bar Applicants, has ten (10) business days from receipt of the denial letter to file his or her written request for a formal hearing with the Office of Bar Admissions. If no written request for a formal hearing is received within ten business days, the Board's tentative order shall become final and non-appealable.

Our records indicate that the Office of Bar Admissions mailed the tentative order of denial to you via certified mail, to the address listed above, on September 13, 2019. You signed for the certified letter on September 23, 2019. As of the date of this letter, the Office of Bar Admissions has not received a written response from you requesting a formal hearing.

Because you failed to file a timely written request for formal hearing, the Board's decision has become final. Rules Governing Admission to the Practice of Law, Part A, Section 8(a).

Sincerely,

Heidi M. Faenza
Director of Admissions

cc:   Russell D. Willard, S.A.A.G.

Certified Mail #: 70180680000194904038

Print      All Messages (allmessages.action)

No.:_____

_____

## IN THE

## SUPREME COURT OF THE UNITED STATES

_____

IAN A. MEDINA,

Petitioner,

v.

GEORGIA SUPREME COURT,
GEORGIA OFFICE OF BAR
ADMISSIONS, GEORGIA BOARD TO
DETERMINE FITNESS OF BAR
APPLICANTS AND GEORGIA BOARD
OF BAR EXAMINERS,

Respondents.

_____

**On Petition For A Writ Of Certiorari
To The Georgia Supreme Court**

_____

**PETITION FOR WRIT OF CERTIORARI**

_____

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................. 2
TABLE OF AUTHORITIES............................................ 3
QUESTION PRESENTED............................................. 4
PARTIES TO THE PROCEEDING................................ 4
RELATED CASES........................................................ 5
PETITION FOR A WRIT OF CERTIORARI................. 5
OPINIONS BELOW...................................................... 5
JURISDICTION............................................................ 5
STATUTORY PROVISION INVOLVED........................ 5
INTRODUCTION.......................................................... 5
STATEMENT OF THE CASE........................................ 6
REASONS FOR GRANTING PETITION...................... 11
CONCLUSION.............................................................. 19

## APPENDIX

In Re: IAM, For Admission to the Georgia Bar, Order
Denying Discretionary Review Due to Mental Health
Precluding Admission to the Georgia Bar, Georgia
Supreme Court – Georgia Office of Bar Admissions
(September 13, 2019).......................................................App 1

In Re: IAM, For Admission to the Georgia Bar,
Final Order of Denial, Georgia Supreme Court -
Georgia Office of Bar Admissions (October 29, 2019) .... App 3

In Re: IAM, For Admission to the Florida Bar,
Initial Clearance of Character & Fitness, Florida
Supreme Court – Florida Board of Bar Examiners
(May 12, 2016) .............................................................. App 5

*Skelton v. Illinois Supreme Court*, cert. pending,
Petition for Writ of Certiorari........................................... App 7

Americans with Disabilities Act of 1990.......................... App 40

2

# TABLE OF AUTHORITIES

Page

<u>Cases</u>

*Brewer v. Wis. Bd. of Bar Exam'rs,* 2006 U.S. Dist. LEXIS 86765
(E.D. Wis. Nov. 28, 2006.................................................... 12

*D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303,
75 L.Ed. 2d 206 (1983) ..................................................... 6

*Hanson v. Medical Bd. of California,* 279 F.3d 1167, 1172 (9th Cir. 2002) ........ 12

*Rooker v. Fid. Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed.2d 362
(1923) .......................................................................... 6

*Skelton v. Illinois Supreme Court, et al.,* XXX U.S. XXX, cert. pending
(2020) .......................................................................... 6

*Weinreich v. Los Angeles County Metro. Transp. Auth.,* 114 F.3d 976,
979 (9th Cir. 1997) ......................................................... 12

<u>Statutes</u>

28 U.S.C. § 1257(a) ......................................................... 5

42 U.S.C. § 12101, *et. seq.*................................................ 5

42 U.S.C. § 12132........................................................... 12

42 U.S.C. § 12131(1)(B) ................................................... 12

28 C.F.R. pt. 35.............................................................. 12

# I.

## QUESTIONS PRESENTED

Under the Americans with Disabilities Act, discrimination by public entities in all programs, activities and services against qualified individuals with disabilities is prohibited. Petitioner is a qualified individual under the Act. Respondents are public entities responsible for certifying and licensing individuals as attorneys to the Georgia Bar. Following informal hearing in which Petitioner presented evidence regarding his diagnosis and rehabilitation, Respondents untimely, arbitrarily, capriciously and discriminatorily denied Petitioner's certification and licensure to the Georgia Bar, without offering any reasonable accommodations, and basing their decision on findings and conclusions related to his disability, mental health status, history and treatment.

The first question presented is whether Respondents intentionally discriminated against or disproportionately impacted Petitioner, following his submission of evidence, by denying his certification and licensure on findings and conclusions of Petitioner's disability, without providing reasonable accommodations, in violation of the Americans with Disabilities Act.

The second question is whether Respondents violated the Fourteenth Amendment Due Process Clause and Fourteenth Amendment Equal Protection Clause when Petitioner applied to sit for the July 2019 Georgia Bar Examination, and he was not given timely notice regarding his Tentative Denial of Fitness lacking any procedural due process in Denial when compared to Petitioner's similarly situated counterparts not in Petitioner's protected classes bearing constitutional scrutiny.

# II.

## PARTIES TO THE PROCEEDING

Petitioner Ian Anthony Medina ("Mr. Medina") is an Emory Law School graduate and bar applicant in Georgia and Florida. The Georgia Supreme Court is the highest court in Georgia and issued final order denying Petitioner certification and licensure to practice law in Georgia after the Georgia Board to Determine Fitness of Bar Applicants issued a Tentative Denial of Fitness to Practice Law in the State of Georgia based on Petitioner's mental health. This was done in violation of the Americans with Disabilities Act.

The Georgia Board to Determine Fitness of Bar Applicants and the Georgia Board of Bar Examiners are administrative agencies of the Georgia Supreme Court comprised

4

of members overseeing Character and Fitness queries and Bar Admissions in the State of Georgia Office of Bar Admissions.

## III.

## STATEMENT OF RELATED CASES

*In re Application of Ian Anthony Medina, For Admission to the Georgia Bar* (proceeding before the Georgia Board to Determine Fitness of Bar Applicants who issued Tentative Denial of Fitness that became Final Order by the Georgia Supreme Court on October 29, 2019) (January 2019)

*In re Application of Ian Anthony Medina, For Admission to the Florida Bar* (proceeding before the Florida Board of Bar Examiners as File No.: 63887) (January 2016)

## PETITION FOR WRIT OF CERTIORARI

Petitioner Ian A. Medina respectfully petitions this Honorable Court for grant of Writ of Certiorari to review the judgment of the Georgia Supreme Court in this case.

———————·———————

## OPINIONS BELOW

None of the opinions below are reported.

———————·———————

## JURISDICTION

The Georgia Board to Determine Fitness of Bar Applicant's Tentative Denial became Final Order of the Georgia Supreme Court on October 29, 2019. This Honorable Court's jurisdiction is conferred pursuant to 28 U.S.C. § 1257(a) because Petitioner seeks review of a final judgment rendered by the highest court in the State of Georgia. As such, Petitioner claims a title, right, privilege, or immunity specially set up or claimed under the Constitution of the United States of America or the treatises or statutes of the United States of America.

———————·———————

## STATUTORY PROVISION INVOLVED

The statutory provision at issue is the Americans with Disabilities Act of 1990 (the "ADA"), codified as 42 U.S.C. § 12101, *et. seq.*

———————·———————

## INTRODUCTION

This case presents a narrow, frequently presented and yet unresolved question regarding the applicability of the ADA to bar admissions cases: May a state bar regulatory authority deny an applicant certification to practice law in its jurisdiction

5

by using the applicant's disability as a factor in finding the applicant's lack of fitness, without providing reasonable accommodations? The identical case styled *Skelton v. Illinois Supreme Court, et al.*, cert. pending, is before this Honorable Court pending grant of certiorari. Both cases posit the same questions and the same issues with minor factual differences. Since granting certiorari is discretionary, Mr. Skelton's petition may be denied. As such, Petitioner furnishes this case again before the Supreme Court of the United States for dire resolution. Lower courts are currently jurisprudentially bound by *Rooker-Feldman* doctrine, which has resulted in varying regulations and perplexing thresholds that lower court's use with difficulty awaiting this Court's supreme resolution and exclusive ruling regarding these cases. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed.2d 362 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed. 2d 206 (1983). This Court should grant Petitioner's request for a Writ of Certiorari to resolve these important and complex legal issues since they are commonly at issue in Bar Admissions cases throughout the United States of America. Moreover, the aggrieved parties in these ADA Bar Admission cases are normally twenty-somethings, fresh out of law school and without a dime in their pocket. This makes litigation of these cases unlikely because potential petitioners likely lack the resources, know-how, stamina and rigor to litigate a case *pro se* before the Supreme Court of the United States right out of law school. Petitioner Ian Anthony Medina respectfully shows the Court as follows:

## STATEMENT OF THE CASE
### A. Factual Background

Petitioner is a first-generation American, first-generation college graduate and first-generation professional school graduate. He was born and raised in Miami, Florida to a family of hard-working immigrants that came to this country seeking opportunity and a better life. Throughout his childhood and adolescence, Petitioner excelled in school. During high school, Petitioner took advanced placement courses and was heavily involved in extra-curricular activities. After scoring well on college admissions examinations, Petitioner attended the University of Florida for college where he began to experience anxiety and depression. Due to socio-economic limitations, Petitioner was uninsured and unable to get adequate treatment in college. After the Affordable Care Act was passed, Petitioner was able to get health insurance and began mental health treatment. After doing well in college and the LSAT, Petitioner attended the University of Florida Levin College of Law ("UF Law") for his first year of law school. On or about January 2016, Petitioner applied to the Florida Bar as a student and the Florida Board of Bar Examiners issued Initial Clearance of Petitioner's Character and Fitness on or about May 12, 2016. Unfortunately, Petitioner did not get accepted to Emory University School of Law ("Emory Law School") the first time he applied for admission. After accomplishing above-average marks during his 1L year at UF Law, Petitioner applied to transfer to Emory Law School after Emory Law School solicited Petitioner in an email asking

6

him to re-apply as a transfer student.  On or about June 2016, Petitioner received acceptance letter to Emory Law School.

Petitioner rightfully transferred to Emory Law School and moved to Atlanta, Georgia on or about July 2016.  Petitioner's Florida health insurance through the Affordable Care Act remained valid in Georgia.  However, Petitioner was out-of-network in Georgia and was unable to receive any medical treatment in Georgia.  Petitioner found Emory Law School academically rigorous, which brought about more stress and anxiety.  Petitioner was able to control his anxiety and depression with routine therapeutic meetings with Emory Law School mental health counselor Sei Yokiosha-Cefalo.  However, Petitioner knew that his mental health was declining in law school, and he needed to receive mental health treatment to remain fit and competent to study and practice law.  Despite Petitioner's struggles at Emory Law School, Petitioner remained motivated working harder to get passing grades.  Throughout law school, Petitioner worked as a law clerk/intern at various law firms.  In addition, Petitioner was a student prosecutor at the Gwinnett County District Attorney's Office under Georgia's Third Year Practice Act.  Petitioner practiced and developed his advocacy skills and fell in love with the legal profession.  At work, Petitioner always received positive feedback and he realized he was proficient at not only the advocacy aspect but also the attorney desk work aspect.  Despite being a hard worker and doing well in his employment tasks, Petitioner was fired from his employment at least three times.  The terminations in employment were all while Petitioner was out-of-network and underinsured with Florida health insurance through the Affordable Care Act.  All terminations occurred while Petitioner was receiving mental health treatment in Georgia out-of-pocket with affordable prescription medications that brought along a plethora of unwanted side effects, such as weight gain, changes in personality, hostility, akathisia, tremors, delusions, and more.  Petitioner was fired from one law firm after there was a discrepancy in his paycheck amount and he asked his former boss for a paystub to verify the amount.  In another instance, Petitioner was fired after a weekend night out with two attorney co-workers when Petitioner confided that he was interviewing for jobs at other law firms, which was relayed to Petitioner's former boss.  In yet another instance, Petitioner was fired during the weekend when he was having a mental health crisis.  Petitioner sent a wordy and frantic email to his former boss for help when Petitioner felt he was being threatened, persecuted and in danger of imminent death or bodily injury from his neighbor.  Instead of receiving help from his former boss, the former boss replied that Petitioner's services were no longer needed at the law firm.

Lastly, Petitioner received a WU (Withdraw Unsatisfactory) on his 6-credit hour externship with the Gwinnett County District Attorney's Office after Petitioner complained to the prosecutorial institution and Emory Law School of harassment and inappropriate conduct directed at Petitioner. Instead of investigating Petitioner's serious allegations, Emory Law School chose to believe Gwinnett County District Attorney's Office account that nothing had happened and Emory Law School removed

7

Petitioner from the externship even though Petitioner was doing excellent in his externship under Georgia's Third Year Practice Act.  After removing Petitioner from his externship and giving him a WU on his 6 credit-hour externship without any procedural protections or due process, Petitioner met with Assistant Dean of Students Katherine Brokaw to discuss what occurred.  In that meeting, Petitioner was advised that he failed the 6 credit-hour externship notwithstanding all the work he had already completed, and Petitioner was advised to seek mental health treatment as soon as possible.  Petitioner does not have a disciplinary record nor was he subjected to any disciplinary actions at Emory Law School of any kind even when he disclosed omissions in disclosure of traffic citations on his admission application.

On or about May 2018, Petitioner voluntarily submitted to psychiatric and mental health treatment with Dr. Michael J. Rosen and had to pay out-of-pocket for psychiatric treatment and medication.  Petitioner sought voluntary treatment to be fit to practice law after graduation in a year and to meet the mark in his Character and Fitness inquiry with the Georgia Bar.  Petitioner was immediately subjected to chemical treatment to treat the diagnosed conditions.  Petitioner was initially prescribed Zyprexa, which is the combination of anti-psychotic Olanzapine and anti-depressant Prozac.  Petitioner immediately suffered adverse side effects, such as weight gain, changes in personality, hostility, akathisia, tremors, delusions and more. Petitioner continued treatment after Dr. Rosen advised that the adverse side effects may subside with time.  The adverse side effects only worsened causing Petitioner's mental health to decline.  For the next two years, Petitioner's treatment plan and prescription medications routinely changed in efforts to find the right prescription medications that lack adverse side effects.   Petitioner exhibited reliability, competence, diligence, trustworthiness and valor in abiding by all treatment plans and their subsequent changes in medications. None of the medications seemed to work and all caused unwanted adverse side effects that affected Petitioner's functioning negatively.

Amidst all the changes to medications and all changes in treatment plan, Petitioner was unable to maintain functional and had to be hospitalized.  After hospitalizations, Petitioner's diagnosis was changed unilaterally without consultation or input from Petitioner.  Petitioner graduated from Emory Law School on or about May 2019 and he intended to practice law in Georgia.  Due to differences in accord with the diagnosis, treatment ended with Dr. Rosen on or about June 2019.  Dr. Rosen remained as on-call psychiatrist prescribing medication for as long until Petitioner engaged with a different psychiatrist.   During this time, Petitioner was engaging with the Georgia Office of Bar Admissions proceeding with his application for admission to the Georgia Bar.  Upon immediate request from the Georgia Board to Determine Fitness of Bar Applicants ("Fitness Board") and without hesitation, Petitioner went to informal conference and submitted himself to a 12-hour long psychological evaluation with Dr. Robert Obst.  Petitioner was advised that the Fitness Board would reimburse him for the costs of the evaluation and subsequent

alcohol & drug test. Petitioner paid out-of-pocket for the 12-hour long psychological evaluation and alcohol & drug testing that were never reimbursed. The 12-hour long psychological evaluation was arduous, exhausting and agonizing. At the conclusion of the 12-hours, Petitioner was then asked to answer around 700 psychological questions identifying the correct answer that is not pathological. Petitioner was drained and fatigued (even with his daily dosage of prescribed Adderall) after a long day complying with the psychological evaluation without a break. As such, Petitioner did not read the 700 psychological questions; he filled in a random answer choice on each question and tried to leave as quickly as possible.

Next, the Fitness Board mandated that Petitioner submit to urine analysis for alcohol and narcotics. Petitioner abided and the results of the chemical analysis were clean just as Petitioner expected. The only chemical that was found in Petitioner's urine sample was Adderall, which the Fitness Board knew was being lawfully prescribed to Petitioner by Dr. Rosen for ADHD. All other narcotics, intoxicants and chemicals tested negative and were not present in Petitioner's body. After absolute compliance with the Fitness Board's multiple requests and after ensuring that the Fitness Board was complacent with all requests, Petitioner realized all that is left is the Fitness Board's issuance of a Clearance Letter. As such, Petitioner purchased expensive bar review course for the July 2019 Bar Examination. Petitioner spent the entire summer of 2019 studying for the Georgia Bar and never heard from the Georgia Fitness Board, the Georgia Office of Bar Admissions or the Georgia Supreme Court. A week before the July 2019 Georgia Bar Examination, Petitioner realized through Respondent's utter silence that Petitioner was not going to sit for the July 2019 Georgia Bar Examination. Petitioner immediately identified concerns regarding Respondent's unilateral deprival of allowing Petitioner to sit for the July 2019 Georgia Bar Examination. Petitioner knew that as a matter of right he had to be noticed and undergo procedural proceedings before being deprived of licensure and certification to practice law in Georgia. On or about September 2019, Petitioner cordially emailed Bar Analyst Dana Hamilton and inquired as to the status of Petitioner's Bar Application. In response, Assistant Director Rebecca Mick replied to the email warning Petitioner to direct all correspondence to her only and that the Fitness Board issued a decision in September for a Bar Examination that occurred in July. Petitioner was perplexed and did not reply to the email. About a week later in September, Petitioner received certified USPS mail from Respondents. Petitioner opened the mail parcel and read the untimely, retaliatory, arbitrary, capricious and discriminatory Tentative Denial of Fitness to Practice Law in the State of Georgia without providing reasonable accommodations. Petitioner informed his employer Prioleau, Milfort & Rivers that he was denied certification and licensure to practice law in Georgia. Instead of requesting formal hearing in a highly antagonistic forum before an adversarial and non-neutral court, Petitioner decided to move to his home state of Florida to be close to family and practice law in the Sunshine State. Thus, Petitioner was forced to quit his job in Georgia that to this day is the highest paid employment Petitioner has ever enjoyed.

On or about September 2019, Petitioner moved to Florida looking at the rear-view mirror with sadness about being constructively forced to leave Atlanta. Petitioner immediately knew the acts, omissions and decision-making of Respondents was in contravention of the Americans with Disabilities Act because Petitioner provided ample evidence of treatment, rehabilitation and fitness to practice law. Although Petitioner knew *ab initio* that Respondents were not going to get away with their illegality, Petitioner did not know when or how. Petitioner was still having mental health issues since finding the right medication without adequate health insurance was difficult. Petitioner's wholesome character and sound judgment is exhibited in the fact that before he even thought about how he was going to hold Georgia accountable, before he even thought about how he was going to explain everything to the Florida Bar, before he even unpacked his belongings entirely he immediately sought Florida health insurance with Ambetter from Sunshine Health engaging with psychiatrists and advanced nurse practitioners in a commendably swift amount of time. As such, Petitioner's mental health treatment and psychiatric care has been wholly continuous, uninterrupted and stable. This is indicative of Petitioner's diligence, reliability and commitment to being fit to practice law.

In Florida, Petitioner went under the care of Sahily Andreu, APRN, Dr. Ernesto Matos-Gonzalez, MD, Luannys Quesada, APRN, among others. Petitioner was re-evaluated and re-diagnosed using more accurate metrics and diagnostic tools. After proper diagnosis and with good in-network Florida health insurance, Petitioner underwent one last treatment plan modification and prescription medications change. Petitioner began taking a new antipsychotic covered by health insurance called Vraylar. The new treatment plan also included a new antidepressant called Viibryd, anti-anxiety medication called Clonazepam and a sleeping pill called Ambien. Petitioner began taking the new Florida prescription medications on or about October 2019. After more than nine months of continuous, uninterrupted and vigorous mental health treatment, Petitioner has seen successful treatment results with no adverse side effects. After exhibiting prudence, responsibility and diligence in ensuring that his mental health and psychological treatment were taken care of first, Petitioner faced the daunting task of engaging with the Florida Bar after abandonment of Petitioner's Bar Application in his intent to practice law in Georgia. Due to Georgia's untimely, arbitrary, capricious and discriminatory denial, Petitioner was ashamed that his Americans with Disabilities Act rights were violated by Respondents. Consequently, Petitioner for the first time ever lacked candor when he informed the Florida Board of Bar Examiners that he had never applied for Bar Admission in Georgia. Petitioner had absolutely no candor issues in Georgia and his lack of candor in Florida is imputed onto Respondents illegal behavior towards Petitioner that diminished his volition in fear and embarrassment. Petitioner was cautious and prudent in Florida by retaining counsel - a hard lesson he learned after not retaining counsel in Georgia. Petitioner was informed that his Florida Bar Application had not lapse but needed amending. With the help of his counsel,

Petitioner amended his Florida Bar Application reflecting all the new updates and changes in life. He immediately expressed remorse for his lack of candor and took affirmative steps to exhibit full frankness with the Florida Board of Bar Examiners.

Petitioner paid a $150 defective filing fee to the Florida Board of Bar Examiners for submitting an incomplete Bar Application that lacked facts and circumstances pertaining to what occurred to Petitioner in Georgia. Petitioner was forthcoming about his painful experience in Georgia and explained what had occurred up in the Peach State. The Florida Board of Bar Examiners then issued a Ticket of Admission to the July 2020 Florida Bar Examination. Petitioner will sit for the July 2020 Florida Bar Examination in Orlando, Florida pending completion of Character and Fitness investigation and final clearance. After disclosing what had occurred in Georgia and why Respondents denied Petitioner's Bar Application, Petitioner decided to charge Respondents for violations of the Americans with Disabilities Act of 1990, the 14th Amendment Due Process Clause and the 14th Amendment Equal Protection Clause. Petitioner learned of the *Skelton* case on Petition for Writ of Certiorari to the Illinois Supreme Court before the Supreme Court of the United States. Petitioner realized this was a prevalent issue in Bar Admissions that was not unique and uncommon. Further, Petitioner reasoned that if Writ of Certiorari is not granted to Mr. Skelton, then Writ of Certiorari will rightfully be granted to Petitioner Ian Anthony Medina. If both mine and Mr. Skelton's Petitions get denied Writ of Certiorari, then at least I got an acquaintance out of all this ordeal that also went through what I went through.

## REASONS FOR GRANTING MR. MEDINA'S PETITION FOR A WRIT OF CERTIORARI

To establish a prima facie case of discriminatory ADA violations in Bar Admissions, the claimant must show that the:

> (1) bad actor is a public entity subject to the ADA and its regulations;
> (2) claimant is a qualified individual with a disability or is regarded as having a disability, but is competent in the profession and practice of law;
> (3) bad actor intentionally discriminated against claimant based on a disability by excluding claimant from participation in or denying claimant the benefits of the services, programs, or activities of the Bar, or by refusing to provide reasonable accommodations, by retaliation, by disproportionately impacting claimant negatively, or by otherwise discriminating against claimant; **AND**

11

> (4) that such exclusion, denial of benefits, retaliation, disproportionate impact or other discrimination was by reason of claimant's disability. *Brewer v. Wis. Bd. of Bar Exam'rs,* 2006 U.S. Dist. LEXIS 86765 (citing *Weinreich v. Los Angeles County Metro. Transp. Auth.,* 114 Cir. 976, 979 (9th Cir. 1997))

## A. Petitioner Was Discriminated Against Based on a Disability
### a. Respondents are Subject to the Americans with Disabilities Act

The Americans with Disabilities Act of 1990 prohibits public entities from discriminating against qualified individuals with disabilities. The ADA provides:

> "No qualified individual with a disability shall, by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Public entities include "any department, agency, special purpose district or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B). Significantly, a public entity may not "administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of a disability." *Id.* In addition, a public entity may not impose or apply "eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary" for the provision of service, program or activity. *Id.* Moreover, a public entity may not "unnecessarily impose requirements or burdens on individuals with disabilities that are not placed on others." 28 C.F.R. pt. 35. Respondents are public entities under the ADA because it is a public professional licensing scheme with substantial government action. *Hanson v. Medical Bd. of California,* 279 F.3d 1167, 1172 (9th Cir. 2002). Thus, Respondents are subject to and bound to abide with the Americans with Disabilities Act of 1990 and all its provisions and amendments.

As such, Respondents possess the affirmative duty to refrain from discrimination of people that are disabled.

### b. Petitioner is a Qualified Disabled Person Possessing All Requirements to Competently Practice Law

Petitioner is diagnosed with several conditions that impose disability. Not only is Petitioner officially diagnosed with mental health disorders, but he is regarded as

having a disability by his colleagues, family members, friends and peers. Moreover, Petitioner is a qualified disabled man because of his highly esteemed academic credentials. Petitioner is thereby qualified because he earned a bachelor's degree in Spanish and Criminology with Honors from the University of Florida - arguably the State of Florida's finest institution of higher learning. Then, Petitioner scored well on the LSAT, which rendered numerous law school acceptance letters and scholarships to many fine law schools. In 2015, Petitioner was accepted to 8 ABA-accredited law schools – UF Law, UM Law, FIU Law, FSU Law, St. Thomas Univ. Law, Florida Coastal Law, Stetson Law and NSU Law. In 2016, Petitioner was accepted to Emory Law School as a transfer student. Petitioner is unequivocally a qualified disabled person upon his tenure and graduation from Emory Law School regarded as the South's most prestigious private institution of higher learning. Not only that, but Petitioner is respectfully drafting this Petition for Writ of Certiorari by himself requiring competence and innate skill in drafting appellate briefs considered something only lawyers do after graduating law school and passing the Bar. Moreover, Petitioner's own actions in studying Character & Fitness law, reading treatises, hornbooks and gaining competence in this area of law in a rather short period of time is commendable and exhibits Petitioner's inalienable qualifications to practice law in any jurisdiction.

Then, to write an appellate brief to the Supreme Court of the United States is something most lawyers never get to do in their entire careers. Petitioner did so in a beautifully articulate and competent manner before he even received his licensure to practice law. This shows Petitioner's natural, organic propensity to the successful practice of law that cannot be robbed from him in violation of the Americans with Disabilities Act. Thus, Petitioner is a qualified lawyer that graduated from Emory Law School; he has real-world legal experience from working in various law firms; he has palpable advocacy experience under Georgia's Third Year Practice Act, Emory Law School's Trial Techniques Program and from advocacy-based electives at Emory Law School; and he is pioneering with great valor this cause of action to remedy Respondent's wrongdoing, being a catalyst for doctrinal and jurisprudential change to avoid flagrant ADA violations for the future of Bar Admissions in the United States of America. Petitioner is not only qualified and competent to practice law, he is preserving the integrity of the legal profession by holding those in power accountable. Thus, Petitioner is a morally upright and competent Emory Law School graduate that is disabled yet resoundingly qualified to practice law.

### c. Respondents Intentionally Discriminated Against Petitioner Based on His Mental Health, Mental Status, Psychological Conditions and Mental Health Treatment

Respondents intended to deprive Petitioner of certification and licensure to practice law in the State of Georgia. Respondents' acts and omissions were volitional lacking any duress or coercion. As such, Respondents disparate treatment of Petitioner was wholly intentional, and any resulting discriminatory impact is said to be the fruit of

13

that clear intent.  Petitioner was treated differently than his colleagues when undergoing Respondent's Character and Fitness investigation and query.  Similarly situated individuals lacking any disability were not subjected to a torturous and utterly unreliable 12-hour long psychological evaluation.  Moreover, these similarly situated individuals were not required to undergo alcohol & drug testing.  Petitioner was targeted by Respondents because of his disability, wrongfully imposing heightened scrutiny and setting the bar for certification and licensure to practice law higher than the rest.  This is rooted in Respondent's invidious discrimination based on Petitioner's mental health, mental status, psychological conditions and treatment.  The mere fact that Petitioner was burdened with additional hurdles to gaining certification and licensure while Petitioner's non-disabled colleagues enjoyed less hurdles to entry is blatantly indicative of discrimination.  Respondent's discriminatory scheme disadvantages disabled people putting them below the status quo imposing more barriers to entry and making their chances at success lower than their non-disabled counterparts.  That is why disabled people are less likely to excel in the practice of law lacking the support necessary to excel.  It does not take a lawyer to realize this is egregiously wrong and Georgia must stop discriminating against people with disabilities and grant disabled person's dignity, respect and a chance at being autonomous and earning a living.  Instead, Respondent's targeted, retaliatory, arbitrary, capricious and discriminatory denial of Petitioner's fitness to practice law unduly hinders Petitioner's livelihood, puts a strain on the economy and renders Petitioner useless despite being proficient in the profession of law after sacrificing four years of his life in law school.

### d. Respondents Were Discriminatory by Refusing to Provide Reasonable Accommodations to Petitioner

Many states with intelligent lawyers and legal advisors have developed conditional admission schemes where certification and licensure to practice law is granted upon enumerated conditions that must be satisfied by Bar Applicant.  These conditional admission programs are reasonable accommodations to Bar Applicants with mental health issues, substance abuse issues and other issues that require monitoring and rehabilitation. States like Florida have been very successful in providing conditional admission to Bar Applicants with disabilities, which puts them at status quo in relation to the non-disabled counterparts.  These reasonable accommodations prevent and stop discrimination, put disabled people on par with non-disabled people and gives a vulnerable sector of our community the chance to have a vocation and enjoy the privilege of having a job and stable career.  The State of Georgia's shoddy program for licensing of attorneys lacks reasonable accommodations for disabled persons in any form whatsoever.  There is no conditional admission, you cannot take the Bar Examination without certification of fitness and there is no Georgia lawyers mental health and substance abuse assistance program.  Moreover, Respondents have no systemic metric that is a reliable measure of mental health in accurately gathering data regarding a Bar Applicant's mental health and how his/her current mental health will be detrimental if allowed to practice law.  Instead, Respondents arbitrarily

make mental health determinations with biased Fitness Board members making arguments against certification and licensure. This archaic and rudimentary methodology employed by Respondents in their Bar Admissions is laughable only if Petitioner were not targeted and discriminatorily being deprived of his license to practice law.

### e. Respondents' Discrimination Disproportionately Impacts Disabled People Negatively

Respondent's callous and invidious discrimination against disabled people not only disproportionately impacted Petitioner, but the entire disabled community as a whole. Respondents very denial of fitness to practice law in it of itself caused Petitioner mental distress. Petitioner suffered emotional distress, feelings of inferiority and shame for being disabled. In addition, Petitioner's livelihood was stripped from him, the rug was pulled from beneath his feet and he had to move to Florida. Instead of fostering an inclusive community where all people are equal and all merit dignity, Respondents robbed Petitioner of his hope, his confidence and his self-esteem in practicing law. Respondents arbitrarily deprived a human being of his career choice, of what he wanted to be when he grew up, of the course of study he sacrificed years of his life pursuing. All this in violation of the Americans with Disabilities Act.

### B. Petitioner is Fit and Entitled to a Job, Career and to Sustain Livelihood

#### a. Respondents Are Making Petitioner A Charge and Burden to Society by Oppression and Undue Burden

As humans, we all need to earn a living to pay bills and be part of the ebb and flowing economy. Respondents denial of certification and licensure to practice law based on mental health reasons is a tautology that fails in logic because it creates a mandatory condition of disability that is already present. The lack of licensure in it of itself creates circumstances that disable a person by taking away their potential to practice law. This is debilitating and unqualifies the individual per se despite being proficient in the legal profession. Petitioner is a prime example of this tautological fallacy that is deplorable, invidious and full of limiting and disabling discrimination. Petitioner, however, has rendered himself capable and qualified by maintaining lawful employment at a law firm as a law clerk doing attorney-level work, except advocating in court.

#### b. This Is A Predominate and Common Issue Nationwide as SCOTUS Is Pending Grant of Certiorari in *Skelton* Case

An identical case is on this Honorable Court's docket this term arguing the same issues under the same law. The case styled *Skelton v. Illinois Supreme Court, et al.,* cert. pending, demonstrates how dire and urgent this issue needs to be resolved

finding a resolution in jurisprudence that is clear – discrimination of any kind, including disability discrimination is unlawful in Bar Admissions procedures when a Bar Applicant is deprived of certification and licensure to practice law based on his or her mental health.  This violates the Americans with Disabilities Act of 1990 and Bar Admissions, particularly in Georgia and Illinois, cannot use mental health to deny a Bar Applicant certification and licensure to practice law.

### c.  Prevalence of ADA Violations in Bar Admissions Requires SCOTUS to Intervene and Set the Law and Jurisprudence

Accordingly, the prevalence and day-to-day importance of the issues in *Skelton's* case and Petitioner's case merit immediate intervention by the Supreme Court of the United States to stop disability discrimination in Bar Admissions and deter future ADA violations, particularly in Georgia and Illinois.  Although Petitioner's Florida Bar application is still pending, Petitioner renders commendation to Florida for enacting such an exhaustive and rigorous conditional admission program to prevent ADA violations in Bar Admissions and give disabled lawyers the chance to wake up in the morning, take prescription medication as directed and be an abled-bodied qualified professional that is passionate about practicing law.

### C. Analysis

Here, Petitioner successfully sets out a strong prima facie case of discrimination under the Americans with Disabilities Act of 1990.  After exercising full candor and complying with Respondents inquiry and investigation as to Petitioner's Character and Fitness, Petitioner was denied certification and licensure to practice law in the State of Georgia without due process.  Absence of due process was not the result of Petitioner's decision to forego formal hearing.  Instead, due process was stripped when Petitioner applied to sit for the July 2019 Georgia Bar Examination and Respondents did not timely notice Petitioner of Tentative Denial of Fitness to Practice Law in Georgia.  After reaching out to Respondents in good faith on or about September 2019, the Fitness Board retaliatorily issued Tentative Denial of Fitness that was arbitrary, capricious and discriminatory.  Due process on behalf of Respondents was non-existent and their egregious procedural violations cannot be imputed on Petitioner in any way.  That is because Petitioner was at all times cooperative and respectful with Respondents.  The evidence shows Petitioner underwent informal conference without counsel, alcohol & drug testing and a 12-hour long psychological evaluation that felt more like punishment.  Consequently, Petitioner was targeted by Respondents forming preconceptions regarding Petitioner, his background and his identity.  These implicit biases made Respondents dishonorable by clouding their judgment with prejudice and bias.  In fact, the Tentative Denial itself is vague, ambiguous and seems to justify denial resting on barebones legal arguments lacking any reasoning.

Petitioner exhibited a "lack of reliability" to "his clients". Respondents fail to include any evidence proving a deficiency in Petitioner's reliability to his clients. The evidence suggests otherwise. While working at The Suggs Law Firm, Petitioner was trusted with a heavy caseload including important high-profile cases helping important clients on a daily basis. Petitioner drafted numerous pleadings that had winning legal arguments obtaining favorable outcomes for Petitioner's clients on each and every motion he drafted for The Suggs Law Firm. While working at Puntier Law Firm, Petitioner helped a noble-hearted immigrant by drafting a winning motion to administratively close removal proceedings after she was facing deportation to a violent third-world country. While working at Ellerin Law Firm, Petitioner helped a marginalized Atlanta African American family after they lost their family member due to paramedics' negligence. Petitioner wrote a winning motion for decedent and his estate after Petitioner realized that the paramedics were in the wrong ambulance without adequate life-saving equipment while decedent was dying. Then, instead of rushing decedent to the hospital, the paramedics stopped on the side of the road and waited for the correct ambulance to arrive with the life-saving equipment. Based on Petitioner's motion, the judge ruled that there were material issues of fact for the jury because decedent would not have passed away if the paramedics took him to the hospital.

While working at the Gwinnett County District Attorney's Office, Petitioner made Metro-Atlanta and the State of Georgia safer by arguing a bond hearing for first-degree murder under Georgia's Third Year Practice Act. Petitioner successfully argued against releasing Defendant on bond asking the court for a million-dollar bond. As such, Petitioner cross-examined Defendant's father on the spot. This was the very first time Petitioner cross-examined someone in real life. On cross examination, Petitioner used his skills from law school and guidance from the supervising attorney to get an admission on the record. The Judge set bond at a million dollars, which was a win for Petitioner and for the Gwinnett County District Attorney's Office. Petitioner always has been reliable to his clients because he is trustworthy and dependable in handling client's affairs. Accordingly, Petitioner has never failed his clients and always goes the extra mile exhibiting his reliability and commitment to providing superior legal services. Petitioner's former employers never reprimanded or disciplined Petitioner. They never sanctioned Petitioner. Instead, Petitioner's former employers praised his work ethic, his customer service and work-product. Petitioner's reliability in the legal profession, to his clients and in life is so paramount that Respondents failed to consider how they would conceal all the facts regarding Petitioner's good work habits, strong work ethic and trustworthiness in dealing with the affairs of others. Moreover, the mere fact that I am charging Respondents and holding them accountable is indicative of my reliability and commitment to doing what is right always. That is my true character and fitness.

Petitioner "lacks fitness as delineated in the psychological evaluation." Again, this merely states a premise and a conclusion. Respondents do not go into detail regarding

how and why Petitioner lacks fitness leaving Petitioner confused and not understanding Respondents shoddy explanation with no reasoning. The fact that Respondents decided to only provide the bare minimum in reason and explanation for denying Petitioner shows their malice, wantonness and willful targeting and discrimination of Petitioner. A Bar Admission Office with benign intentions would have explained how and why Petitioner lacked reliability and fitness to allow the bar applicant the opportunity to make the changes needed to attain adequate character and fitness in the future. Instead, Respondents had no explanations or evidence to support their baseless and insane contentions. The reality is that my mental health issues detrimentally affected me in my employment leading to my unjustifiable terminations. Reliability to my clients was always present. I always possessed adequate fitness minus the instances when I ended up in the hospital. These rare instances when I lacked fitness, although serious, do not rise to the level necessary for disqualification of licensure to practice law. Accordingly, Respondents willfully discriminated against me based on my disability by exaggerating the gravity of my mental health and treatment. Moreover, there was a conscious disregard of any and all rehabilitative evidence Petitioner tendered. The results of the alcohol & drug testing were favorable to me. Unsurprisingly, the probative weight of the alcohol & drug testing results was grossly minimized.

Respondents thought they could get away with disability discrimination and continue depriving certification and licensure to practice law in Georgia based on mental health reasons. The stigma of mental health ends today in the United States of America and after this Honorable Court's ruling, States will know that being a lawyer with a disability is okay if you have adequate and continuous treatment. I presented sufficient evidence of my mental health treatment and rehabilitation to Respondents. However, ulterior motives rooted in invidious discrimination, prejudice, bias and stigma made my dreams of becoming a lawyer almost impossible. Petitioner respectfully charges Respondents with discriminatory ADA violations and 14th Amendment Due Process Clause & Equal Protection Clause violations. In addition, Petitioner humbly petitions this Honorable Court for certification of fitness to practice law in the United States of America.

———————

## CONCLUSION

Petitioner Ian Anthony Medina's Petition for a Writ of Certiorari should be granted.

This 30th day of June, 2020.

Respectfully Submitted,

Ian Anthony Medina

18

7443 Loch Ness Drive
Miami Lakes, Florida 33014
(305)-450-8185
ian1193@outlook.com

Petitioner



**SUPREME COURT OF THE UNITED STATES**
**OFFICE OF THE CLERK**
**WASHINGTON, DC 20543-0001**

September 23, 2020

Ian A. Medina
450 NE 5th Ave.
Apt. 244
Ft. Lauderdale, FL 33301

    RE: Medina v. GA Supreme Court, et al.

Dear Mr. Medina:

    The above-entitled petition for a writ of certiorari was originally postmarked July 2, 2020 and received again on September 15, 2020. The papers are returned for the following reason(s):

    Your case must first be reviewed by a United States court of appeals or by the highest state court in which a decision could be had. 28 USC 1254 and 1257.

                Sincerely,
                Scott S. Harris, Clerk
                By:

                Redmond K. Barnes
                (202) 479-3022

Enclosures